Good morning. May it please the court. My name is Luke Leroux. I represent RPS Holdings, LLC, doing business as the capital cabaret, the appellant. And we're here today appealing the denial of a motion to refer the lowercase to arbitration based on some interpretations of the arbitration contract that were issued by the district court, which we felt were erroneous on the basis of two different factors. One was that the district court should have used state law to find that at the very least there was an implied contract that would have all of these matters as covered claims referred to arbitration. Did you raise implied contract before the district court? I think... And if so, could you tell us where in the record you did so? Well, we raised it in the appeal. We didn't really raise implied contract because we didn't think there was an issue with the... Well, haven't you then waived that argument or forfeited it? Well, I don't think so. I think it's basically because of the interpretation made by the court. We felt that the reference to cap cab, the entity doing business as the cap cab, and I think that certainly when the district court issued its opinion, it focused primarily on the nomenclature of the parties to the contract. It felt that Ms. James signing as S. James and then the signature of the agent of the company and the reference to the company as cap cab was insufficient. We actually felt that the biggest issue to overcome was the issue with the geographical restriction. I think it's obvious that this contract was borrowed from another location where it says that the arbitration is to take place within 25 miles of Charlotte. Obviously, Morrisville is a lot farther away than that and we just felt that that was going to be the big problem to overcome. We did not anticipate at all that the reference to cap cab was unclear or that the conduct of the parties, certainly in reference that Ms. James worked there for at least six years without complaining about any aspect of that. So I think that based on those arguments, that's certainly a relevant issue to be brought forward on appeal. I'm sorry, so the answer was you didn't raise the implied contract defense before the district court and then I think, I don't want to put words in Judge Keenan's mouth, I guess my question is then why should we consider it now? Well, I think because of the nature of the opinion that was issued. Obviously, the issue that came up was the reference to cap cab. Counsel, I mean not to argue for you, but as I read the record, you didn't raise it in the motion to compel, but you raised it in the motion to stay. That is correct. Now, that may not be enough, but you did raise it below. It was in the motion to stay. Now, you didn't raise it, so it's not the first time on appeal. I think the issue for us is whether that's sufficient or whether somehow that is related enough to your primary argument. Our perspective going in and making the argument was that there was no question who cap cab was. There was no question that in interpreting arbitration contracts, the courts are to liberally apply that and that it was obvious that the club let her work there and she worked there for over six years without anybody complaining that this contract would be unenforceable. I think when you look at the arbitration clause, it specifically references this exact type of an issue. So, we never anticipated that reference to cap cab would in any way pose any obstacle. We knew who cap cab was. You still didn't put any evidence in the record that cap cab had a legal relationship with RPS. I just felt that it was obvious because the doing business name is capital cabaret. How obvious can it have been? Because the first thing that happens in this case is that it's not RPS who comes into court and says this is us. It's an entirely different entity, PRS, who comes into court and is like, here's what's obvious. We're the signatories to this agreement. We're the ones who can enforce it. And then they lose, and then RPS comes in and says, never mind, it was us, RPS. This is just kind of a wild case, right, to have these two entities. It's not quite a stop all, I guess, but it does seem odd that two companies, I take it the same principle and the same lawyers, can do this rope-a-dope thing where the first one comes in and says it was us, and then if they lose, then the next one comes in and says, no, it's obviously us. It's just weird. I'm embarrassed to say that there's a lot of ironies in this case and that the original misnomer, the case named as a defendant, the owner of the property, which is PRS, and I didn't pick up on that. I was hired to represent the defendant. I didn't do any independent research. I hate to say I would have believed that had my clients known that they had the wrong entity, they might have said something or told me. I didn't do any independent research. I don't mean to fault anyone, but it just seems like an odd case to be saying, look, it's 100% obvious what's going on here because it wasn't even obvious to your client. Well, I think what the district court did was clear that up for us, obviously. When the district court actually looked into the fictitious name filing, it was not PRS. It was RPS. So in a text order, the district court directed us to fix this. We consented, and then we took it from the top. I don't know where the original mistake was made. I know my clients didn't pick up on it, and they're so similar. But when you get down to the DBA, the sign, the capital cabaret, I think one of the issues is when you look at the actual arbitration contract, the space to actually identify the company is about one inch. I mean, I don't think it would be even possible to actually write down RPS Holdings, LLC, doing business as the capital cabaret. I mean, they're the drafters of the agreement. Maybe they should have left a bigger space and made the dates line up and things like that. One would hope. It doesn't all come down to burden of proof, and the law assigns you the burden of proof of establishing your arbitration agreement. It's like any other contract. You're the one propounding the existence of the contract. You have to prove there was one. And you're just trying to, it seems to me, pretty much your case comes down to, well, this is common sense. I don't know that it's just common sense. I think that it certainly can be predicated on the conduct of the parties. And I think that certainly in the briefing that we provided, certainly in the motion per se, but I'm confident that in the motion that we filed to compel the arbitration, we referenced the existence of the contract. And I think if not specifically, then generally we identified that it was an offer and acceptance and consideration. And I think that if we did not anticipate the very formal approach that the district court took to interpreting the contract, we probably would have made those arguments. But we just didn't anticipate that. But you can't, I mean, I won't mean to be rude, but you can't really say you didn't anticipate it so you didn't prove your case. You've got to say you proved your case and explain how. I mean, courts get to decide, and all they can do is decide based on the evidence. So Judge Keenan said, do you have evidence in the record that you say establishes that the arbitration agreement creates a contract between Ms. James and your client? It seems to me, I thought you were saying, yeah, we do. We got her, we got a piece of paper, the contract. She signed it. That indicates, yeah, we made an offer. Yeah, her signing it indicates, yeah, she accepted it. We got this cap, cab, cap, cap, cab, and the question is, what's that? And what's your position on whether that establishes that it applies to your client? Well, I think the reference in the signature lines to company, and I think that we cited in the briefs again here, the case law that said you don't even need a signatory on the part of the company to actually bind one to arbitration. So it was really... That's if there's an implied contract, in fact, which I know you're arguing. But if we're just talking about is there an express contract here, let's just talk about that for a minute. What is the evidence in the record that shows that this thing is between James and someone who has an agency relationship and the ability to bind your client? I think the evidence in the record certainly would be, as far as Ms. James is concerned, I know that the district court was concerned it was just S. James. I think the district court gave you James in the end. Well, I think probably because we had a copy of her passport attached to the actual arbitration agreement. All right, so who else signed the contract? An agent of the Capital Cabaret. How do we know? I'm sorry.  That was the approach we took. And I think that in filing the other documents, we got the affidavit from Mr. Fong to clear up the differences between PRS, which was the original defendant, and then RPS. It was certainly our position that there was enough there, certainly with our embrace of the liberal approach of referring cases to arbitration if there appears to be any meeting of the minds, that that was a sufficient basis to have it referred. My approach goes to questions like, well, who signed the agreement? I don't think you're supposed to just invent, well, I guess it was someone for the company because then we can send it to arbitration. So you're talking about where it says house signature, and then I guess there's some initials. But there's nothing in the record as to who signed this agreement, and there's nothing in the record as to whether that person had either actual or apparent authority to sign it on behalf of your client, right? And that was where we fell back to. But is there a reason why there's not an affidavit in the record saying, here's who signed the agreement? Or even, we don't know who signed the agreement, our bad, but look, here's how we usually do this. A manager with authority presents it to the employee. There's nothing like that in the record? Nothing other than the fact that I think the closest we get is the affidavit of Mr. Fong Nguyen. Which says what? Basically, it explains the differences between the companies and that their position is to arbitrate any issues of this nature. So, obviously, this is a de novo review, and it was certainly our perspective that, and I hate to just use the word common sense, but I think if you get down to the basic analysis of North Carolina contract law, it was our position that that was sufficient. And, obviously, the level of formality might have been, I won't say overlooked, but not hit head on. But we went through the other aspects of the arbitration agreement to certainly identify that the nature of the agreement was that any dispute, no question that this was one of the covered claims that would be referred to arbitration, that this was a sufficient basis to do so. I don't know that these matter as much, but we got a contract that in print is dated 2013, signed 2015. We got arbitration within 25 miles of Charlotte, and James didn't work within 25 miles of Charlotte. Then we don't know who signed it. Then we got CapCab. I mean, it seems like there's a lot lacking in the formalities here. I mean, at some point, even if we kind of were to say we kind of know who CapCab is, I mean, is there some level of proof to just clean up all this mess that seems to be present in the contract? And if you don't do that with an affidavit or something, at some point don't you have enough flaws in your contract that they're just not enforceable agreements? Well, I'll address the geographical obstacle first. I think we cited the case law certainly in our brief that said that if there's something that suggests an inability to perform or an impossibility that certainly Ms. James knew or should have known because it was clear on the face of the contract that she signed in Morrisville that there was no possible way that geographical restriction or guidance could be followed, that she can't really use that as a defense. And as I said, we thought that was the primary issue with the dangers of word processing someone else's document. But from our perspective, we felt that the level of informality was not asking the district court to just sort of blindly refer this case to arbitration. It was always felt that there was enough there, even with the colloquial, sorry, reference to CapCab to know who the company was. And I mean, obviously, it would have been better had somebody written out the entirety of the entity operating the business. But as far as the understanding of who that entity was, we didn't think there was any dispute about that. And we didn't think there was any dispute that the conduct of the parties went forward embracing that as we went along. And you didn't anticipate that someone might wonder who else signed the contract? I will say that's sort of the part I'm stuck on. I understand your argument about CapCab. I mean, I think that's a close question. But the fact that this happened twice, right? There's the first time when PSR comes in, and then the district court has to do all the work to figure out who the parties are. You had two chances to say, look, here's who signed the contract on behalf of us. And if you couldn't do that, at least put in an affidavit explaining the process for getting these things signed. But that was another thing that just nobody anticipated, that there might be a question as to who signed the agreement? The view of that was that the conduct of the parties, nobody disputed that Ms. James continued to perform. No one disputed that the CapCab or whatever didn't allow her to perform. But if that's what you... I really am just trying to figure out what happened here. If that was your big argument, like, whatever, this thing obviously isn't going to work, but we have an implied contract. In fact, it is very odd that that was not presented to the district court before it rendered its decision as to whether there was a contract in this case. I mean, if that was what you were banking on, why didn't you argue it to the court? We didn't bank on it until we came to the conclusion that it was not formal enough to satisfy the district court. We never anticipated there would be any question about the formality of the contract. Thank you. Good morning, and may it please the court. My name is Gilda Hernandez, and I represent the appellee Siobhan James. Your Honors, RPS is asking this court to enforce a carelessly drafted document that fails to properly identify the parties it seeks to compel to arbitration. Recently, in Rogers v. Tughill, this court, quoting the Supreme Court's decision in Morgan, recognized explicitly that arbitration obligations are grounded in state contract law. When an objection is raised that the party seeking to enforce an arbitration agreement is not itself a party to that agreement, the district court must determine whether that party is entitled to enforce it. Otherwise, a party with no contractual right to compel arbitration might be permitted to do just that. Counsel, if I could interrupt. If there was only a signature line for your client, and this document was presented to her, and she signed it, would that not create an express contract? Your Honor, that is an excellent question, and it would not unfortunately create an express contract because what we're looking at and what the district court is bound by is the four corners of the document. Mine's a hypothetical. So you're saying if we had an agreement that only had a signature line for the employees, the employer presents it to the employee and the employee signs it, you're saying that doesn't create an obligation by your client? To the extent that the parties are properly identified in the document and the employee signs, yes. Okay, so let's break it down. So if there was not a signature line for the company and the company was clearly identified, if your client signed it, it would create a contractual obligation, correct? That is correct, Your Honor. So isn't the law that if a party isn't properly or formally identified, if it's apparent or obvious who the employer were by the way they were identified, isn't that enough to create a contractual obligation? I know you're not suggesting that's met here. But there are cases where there's misnomers but it's pretty clear who's being talked about as the party. And courts generally say we're not going to be that technical. Do you agree with that? There are some cases where the courts have said that we don't have to be that technical. However, it is also true that there are district courts, especially in the state of North Carolina, the district courts are required to follow state contract principles. And in North Carolina, there is authority under North Carolina law that if there are any ambiguities in any type of agreement, those ambiguities are going to be construed against the drafter because it is, and in this case, the purported drafter is RPS, who is in the best position to protect its interest. I'm familiar with that presumption. And in interpreting an ambiguous term, I get that. I'm trying to square that up with the law where you have cases where a party to a contract is misnamed and the courts say if you know it's readily apparent who that is, they still enforce it. And so what I'm getting to is, I mean, is it your position that your client didn't know who CapCab was? Your Honor, CapCab, it is one thing, first and foremost, that RPS did file a certificate of assumed name with the Wake County Register of Deeds. So there's a connection between RPS and Capital Cabaret, but it failed to provide that information or to file a certificate of deed with the Register of Deeds as it relates to CapCab. And I think it is important for the parties to understand and for there to be a mutual intent to arbitrate and that language to be clear for both sides. You may have them on the technicality, but are you really saying your client didn't know who CapCab was? Certainly the question about the CapCab, she knew Capital Cabaret, but I think that, again, because the purported drafter of the agreement is RPS, RPS is in the best position to protect its interest and it had a responsibility to ensure, as the party with more bargaining authority and when you're looking at both sides, who is the more sophisticated party, it certainly was RPS. And it should have clarified in that purported arbitration agreement that advising the appellee, Ms. James, who she was bargaining with. Is there, does the district court, I'm sorry, I'll stop. But does the district court have an obligation, if there's a question of fact here, as to this, whether there was a contract, to conduct an evidentiary hearing on the matter? And I recognize they didn't ask for that, but do our Berkeley school districts and other cases say, before you refuse to compel arbitration, if there are any questions of fact about the formation, is the district court required to conduct an evidentiary hearing? Your Honor, that is an excellent question. And I think what happened here is that the district court, in writing a very well-reasoned opinion, provided RPS with two bites at the apple. Not one, but two. And in the first decision, wrote the decision without prejudice, advising RPS on all of the deficiencies found in the purported arbitration agreement. And therefore, at the point where RPS failed a second time, what additional information could have been gained from a discovery or an evidentiary hearing? All of the information was within the possession and custody and control of RPS. And your point's well taken, that they had every opportunity to do it. I'm not really quarreling with that. I guess I'm quarreling with our law. I mean, there's definitely answers that we don't, there are questions we don't know the answers to, right? So in theory, an evidentiary hearing would say, who is this person who signed for the company? Does your client know who CapCab is? Quite frankly, the signature for CapCab looks a lot like your client's signature on the agreement. Did your client fill in CapCab? I mean, there are questions that are out there. Now, they didn't ask for it. They had opportunity to bring all that up. Maybe that means they don't get the chance to do it. But I'm struggling with our case law that says the district court before refusing to compel, if there are questions of fact, must conduct an evidentiary hearing. And counsel, in answering that question, could you reference the statute, where the statutory language regarding failure to arbitrate under agreement 9 U.S. section 4, where the law says if the making of the arbitration agreement shall be in issue, the court shall proceed summarily to trying. What does at issue mean? Or in issue, excuse me. What does a party have to do to place something in issue? And in this case, what did the defendant have to do to put in issue the dispute regarding the parties? In other words, I think maybe it would be helpful to analyze this in terms of the burden of proof and what does the term in issue mean under the statute. Is it enough to just deny the existence of an agreement? Or does the party disputing the existence of the agreement with their burden of proof have the duty to make some preliminary showing to support their position that there isn't an agreement? I think that might be a good supplement to your answer. And I think that what we have here, Your Honor, is obviously RPS invoked the presumption of arbitration because relying on federal policy that favors arbitration. And the issue is that the district court isn't just going to blindly grant motions to compel arbitration, especially when there is a valid question about the contract formation. And to the extent that a party is contesting the validity and enforceability of the contract at issue, then it goes to the, in this case, RPS's burden to demonstrate that it has met the standard and that it's obviously a burden that is analogous to the summary judgment standard. What would the defendant have had to do to entitle it to an evidentiary hearing under the statutory language of whether the agreement, the existence of the agreement is an issue? What did the defendant have to do to place the existence of the agreement in issue in accordance with its burden of proof under the law? I certainly think that in terms of placing it at issue, maybe it would have been, you know, providing some sort of information to suggest that the appellee knew who she was bargaining with, that she understood that CapCab was the same as Capital Cabaret, and therefore an evidentiary hearing would have maybe elicited that information through the process of, you know, some sort of direct testimony or what have you. But in this case, that wasn't provided and it would not change the details of the express agreement which was in writing and it was RPS's failure to provide very specific details that CapCab is, was, there was a connection between CapCab and RPS or CapCab and Capital Cabaret. Let me follow up then with a hypothetical and see what your answer is. What if the defendant, contrary to what it did not do, what if the defendant instead had a proffered evidence or had presented evidence, an affidavit, stating the legal relationship between CapCab and RPS? Would that have been sufficient to put it in issue? I think that that probably would have given at least the district court something to work with and probably would have given them a different outcome or a different decision. It would have entitled the defendant to this evidentiary hearing under the law? Yes, I think that could have been absolutely a point well taken for the district court. But in this case, they had multiple opportunities and you can see from all of the authority that was cited by the district court, Arthur Anderson, certainly the role in matter and the role in matter versus Sandy Morris is another decision by this court where the court very, this court explicitly explained the need to comply with formalities, contract formalities in turning square corners. Can I ask you a question? Part of your discussion here today has made me realize I'm not, there's something I may not be that clear on. In your view, so there's the CapCab, I think of it as the CapCab question, is there a connection between CapCab and RPS? And then there's the question about, well is this a mutually binding contract? Who signed it on behalf of RPS and did that person have actual or apparent authority to do that? Do you understand those as sort of two separate and alternative problems with this purported contract or are they related so that if you kind of, if you fix the Cap, I guess what I'm saying is if you fix the CapCab problem, imagine this contract actually said, notwithstanding the space being very small and very tiny type they had put in, Capital Cabaret doing business as RPS. But the rest is the same. We still don't know who signed it for RPS. Still a problem or not a problem? Because, well, if you have one party sign it, that's enough. I think it, again, it goes back, it's almost analogous to the Rogers versus Tughill case in that you had the third party, Tughill, who was trying to enforce the arbitration agreement between Tughill and Rogers. And in that particular arbitration agreement, there was no language that somehow, you know, Tughill would be a third party beneficiary to the arbitration agreement between Tughill and Rogers. In this case, there was no language that somehow there was a connection between CapCab and RPS. But I'm asking you to imagine a different contract. This contract says, where right now it says CapCab, take out CapCab, and instead it says Capital Cabaret. No, it says RPS doing business as Capital Cabaret. So that problem is fixed in my imaginary contract. But we still don't know who signed it for RPS and whether that person had actual or apparent authority to bind RPS. Is that a problem or not? That is not a problem. That would not have been a problem. We have had other cases where the arbitration agreement clearly laid out both parties. And in that case, our client had signed the arbitration agreement, but the company had not. And there isn't a problem with that. The courts have found that that's perfectly fine. Because, again, relying on the four corners of the document, what is the language in the document? And if it clearly identifies the parties, then there is no ambiguity in terms of the intent to arbitrate. But if a company can only act through its agents, why wouldn't agency still be an issue? Well, certainly, if there's a signature line and there is no name there on behalf of the company, then there is a concern about whether or not that particular individual has been provided with agency authority to act for the company, including the position and title and so forth. So I could see how that could potentially be a problem for the courts. I don't even understand how it could not be a problem. But I don't want, again, you're going to stick with, you can see how it might be a problem. I can see how if there is a signature line and there's no information to suggest the name of the title, the name, the title, position of the person signing on behalf of the company, then agency could pose a problem. But to the extent that there are all of these details in the agreement, we have had decisions where the district court found that there was enough information to demonstrate an intent to arbitrate and a meeting of the minds between the parties. And back to the first situation, the CAP-CAB, in the record at the time of the decision, the contract was in the record, correct? The purported arbitration agreement was in the record. Okay, I didn't mean to suggest it was a contract. The document was in the record, correct? I appreciate your clarification. And the district court took judicial notice prior to the order that Capital Cabaret was a valid DBA for RPS, correct? That is correct. So in the record, we link up RPS and Capital Cabaret. That's correct. And what we have is CAP-CAB, and your position is they need to have some affidavit that says, hey, we don't really know who CAP-CAB is. That's just shorthand for Capital Cabaret. Is that really the position? That is really the position, Your Honor, and that is consistent with the district court's well-reasoned opinion. The district court was also looking at the North Carolina general statutes regarding the requirement for a business to file a certificate of assumed names with the Register of Deeds and finding nowhere that CAP-CAB was also an assumed name by RPS. And then also demonstrating and expressing the concerns about how even in the first decision, and as my colleague Mr. Leroux has already indicated, the confusion because PRS partners, LLC, was also addressing that somehow it had a right to enforce the reported arbitration agreement. So there are just a number, a litany of issues that were wrong with this supported arbitration agreement. I have a question because the district court also did talk a lot about the agency problem, that there's CAP-CAB but there's also a problem and that we don't know who signed it for RPS. But you think that part was maybe wrong. The district court should not have worried about that part. I certainly want to make sure I clarify the record, Your Honor. I believe that all of these issues were problematic. These were all issues demonstrating sloppiness on the part of appellant RPS. I take your point and yes, contracts are kind of a formal area of the law. But if there is a sloppy agreement but it's clear there's a meeting of the minds, sloppiness doesn't by itself mean you don't get to enforce your agreement. I think that the more important issue is just the number of issues, including some of the ones that Judge Quattlebaum addressed, which were the dates at the outset of the agreement demonstrating 2013 and then the signature actually reflecting 2015, the name for the company supposedly for CAP-CAB acting as an agent and yet the information was indecipherable with no title, no position, nothing in the actual language or four corners of the document. So I think collectively and consistent with the number of decisions that have been addressed by this court regarding, for example, the Roland matter, those issues have demonstrated and support the district court's ruling and that hopefully this court will affirm the district court's ruling. Thank you very much. I did find the affidavit of Mr. Wynn that, as the court has noted, was supplied along with the motion for stay, which we felt restated the obvious. It says RPS Holdings LLC has viewed any arbitration agreement where this company was identified as CAP-CAB as a fully enforceable contract in spite of any informality as it pertains to the rights and obligations of the performer signing any such agreement and RPS Holdings LLC. Counsel, I think you said what I understood to be the case. That was not before the district court at the time of the order denying the motion to compel and you didn't move to reconsider and place it into record. It was part of the motion to stay. That is correct. And I think it's clear from the motion to compel arbitration after the parties were corrected to RPS that the entirety of that document focused solely on the geographical issue. The belief being that there was simply no question that a reference to CAP-CAB and the continued performance, which I think is referenced as Ms. James worked at the club for six years, it seemed to us that there was no question that that was the right party and that that reference was sufficient. And I spent some time, I know that there is a case, I could not find it, but it basically said that in another arbitration setting when the actual party didn't refer to the entity but referred to its doing business as or its fictitious name, the court in that case found that arbitration was appropriate. We basically looked at the term CAP-CAB as opposed to Capital Cabaret. If Capital Cabaret would have been all right as a reference to the entity based on that authority, it was certainly our belief that CAP-CAB would be equally as successful and valid in pursuing the arbitration. The other issue I wanted to bring up, and again, it's certainly not my place to put burdens on the district court, but I think the case law and certainly what we've referred to as subsection 2 or the alternative argument, if in fact there are all of these issues of fact, and I think the court observed this, I don't know that the defendant has to ask for that evidentiary hearing. But you do have to place the matter in issue. And what does the case law say about what constitutes in issue? Don't you have to come forward affirmatively with some showing that the situation isn't in fact as you say it is, that there was a contract? And what showing did you make to put it in issue in this case? I would submit just our response to the original arguments that there's some informality of this contract. And candidly, it was our position that if there is an issue, then the court should have directed us to an evidentiary hearing. The court certainly had that level of discretion. As this court has observed, there were a lot of unanswered questions. And quite honestly, I understand the district court's desire to complete the research and drafting necessary to issue the order, but in the process of creating that order, had the court identified all of these unique issues of fact, based on the statute, it was our perspective that the court should have asked if we wanted to participate in an evidentiary hearing. I don't know, and candidly, I wish we had asked for it, but I don't know that the failure to request that, based on, at that point in time, the unknown analysis that would have been used by the district court, because the district court concluded that there were all of these unanswered questions and these important issues relative to agency and the nature of whether the reference to CapCab was valid, had the court decided that those were simply unanswered, I think the court certainly had the option, and I'm reluctant to say obligation, but it would have helped us answer those questions adequately to the district court, that prior to that point, we did not even anticipate as questions. Counsel, maybe I can, I might be able to extrapolate from that answer, an answer to a related question I have. We did hold in our Berkeley case that the district court does have sort of a sua sponte obligation, if a matter has been put in issue, if there's some evidentiary, some evidence in the record to put a matter at issue, then the district court sua sponte is supposed to have an evidentiary hearing, but we also held that the failure to ask for one in front of the district court is a forfeiture, and that we can exercise our discretion to forgive it on appeal, but we need some good reason to do that, and because you haven't argued it that way, is there some good reason why the forfeiture should be forgiven in this case? Because usually if someone forfeits something at the district court, we just don't review it on appeal. The issue is really the dependence on the validity of the arbitration agreement going in. There was no doubt whatsoever that by our submission of that arbitration agreement, that the defendants felt that it was fully valid and enforceable. Candidly, if the court decided that all those issues existed and determined that there were unanswered questions, I think that the error should go on the part of being generous or in an abundance of caution, allowing us to go forward with that evidentiary hearing. We didn't think we had to ask for that. I hate to say it, but from our perspective, the reference to CapCab and the signature of someone who purported to be an agent of the company was more than adequate to create a valid and binding contract, certainly under North Carolina law, to convince the district court that the liberal preference of arbitration was sufficient. It wasn't a request that the court blindly refer the case to arbitration. It was sincerely felt that what was there was more than adequate and that whatever colloquial reference may have been there. This is just a procedural question. I'm just curious. Was there a hearing before the district court in this case? It was just all on paper? There was no hearing. It was all done by pleadings. And candidly, this was, not to use it as an excuse, it was a reality for all litigation, but it was during the peak of COVID and we went months and months without being able to accomplish anything. I defer to my colleagues. I don't even know if we even had a telephonic conference. I think it was all done through the submission of pleadings and documents. I don't think that there was any addressing any district court in an effort to try to answer questions or pursue this in a more thorough and successful fashion from our perspective. In summary, thank you very much for the privilege. I'm happy to answer any more questions you may have. Thank you. Thank you very much. All right, we're going to come down and greet counsel and then we will hear our last case for the day.
judges: Pamela A. Harris, A. Marvin Quattlebaum Jr., Barbara Milano Keenan